

GJP

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FILED
MAY 18 2015
MICHAEL E. KUNZ, Clerk
By______ Dep. Clerk

J DOG FRANCHISES, LLC.
100 Berwyn Park,
850 Cassatt Rd, Suite 225
Berwyn, PA 19312

v.

LOUIS VAUGHN JR.
1326 Garden Gove Court
Houston, Texas 77082

JURY TRIAL IS NOT DEMANDED

15 2780

**Civil Action Complaint**

**Jurisdiction and Venue**

1. J Dog Franchises LLC. ("J Dog " or "Plaintiff") is a Delaware limited liability company with its principal place of business in Pennsylvania.

2. Defendant Louis Vaughn Jr. ("Louis Vaughn" or "Mr. Vaughn") is an individual doing business as "J Dog 2" and is a resident and citizen of Texas.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a) because J Dog and Defendant reside in different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. In addition, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the Lanham Act, 15 U.S.C. § 1051 et seq.

4. Defendant has also consented to personal jurisdiction by signing the Franchise Agreement. The Franchise Agreement states at Section 19.12 Governing Law ("...The Pennsylvania Court of Common Pleas or the U.S. District Court for the Eastern District of Pennsylvania, as appropriate,

5/18/15
1 orig
given

shall have exclusive jurisdiction to entertain any proceeding relating to or arising out of this Agreement, and Franchisee and Franchisor each consent to the jurisdiction of such Courts in all matters related to this Agreement").

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

**Background**

6. J Dog is engaged in the business of franchising to individuals and entities the right to own and operate J Dog branded franchises that provide junk and garbage removal and disposal services.

7. J Dog Franchises, LLC is the successor to J Dog Franchises, Inc., a Pennsylvania Corporation founded in 2012. J Dog Franchises, Inc. sold six franchises to five franchisees from 2012 through the purchase of the brand and all of the assets of J Dog Franchises, Inc. on September 19, 2014. All six of these franchisees are now franchisees of J Dog Franchises, LLC.

8. J Dog licenses a system (the "System") for establishing, developing, and operating a junk removal business. The System includes brand development, training, marketing programs, and access to the mark "J Dog Junk Removal."

9. J Dog also licenses, as part of the System, the marks "J DOG JUNK REMOVAL (U.S. Reg. No: 4253237)" and the stylized logo "JDog Junk Removal (U.S. Reg. No. 4267383)" (the "Marks") from J Dog Holdings, LLC. J Dog Franchises has an exclusive license with J Dog Holdings LLC to use the Marks and to grant licenses for others to use the Marks.

10. J Dog franchisees are licensed to use the trade names, service marks, trademarks and trade dress of J Dog and to operate under the System, offering pickup, removal, hauling, and disposal of junk. The System provides: personal management and training, purchasing, marketing, sales promotion and advertising, associated logos, commercial symbols and such other trade names, and trademarks and service marks. The relationship between J Dog and its franchisees is governed by the terms and conditions of a franchise agreement entered into between J Dog and each franchisee.

11. As a result of the System, J Dog has become widely known and favorably recognized by consumers and its Marks distinguish its franchises from similar businesses. J Dog customers utilize J Dog's services because of J Dog's unique program and reputation for, among other things, quality and performance.

12. J Dog and its franchisees have continuously used and advertised J Dog's Marks throughout the United States. J Dog has developed stringent operations criteria and standards for its franchisees and a coherent nation wide marketing and publicity platform. The System is designed to protect customers as well as to protect J Dog's name and reputation for the benefit of J Dog and all of its authorized franchisees.

13. On June 24, 2013, Defendant Louis Vaughn Jr. entered into a Franchise Agreement (the "Franchise Agreement") with J Dog Franchises, Inc. (now known as J Dog) under which Mr. Vaughn was granted the right and undertook the obligation to operate a J Dog franchise servicing the Houston Texas area.

14. Pursuant to Section 6.2 of the Franchise Agreement, Defendant agreed to pay without offset, credit or deduction of any nature, to Franchisor, so long as this Agreement shall be in effect, a

monthly royalty fee of five hundred dollars ($500) for the first twelve (12) months of the agreement and one thousand dollars ($1000) for months thirteen through twenty-four (13-24). Defendant further agreed to pay one thousand and five hundred dollars ($1,500) a month after month twenty-four (24). In addition to this agreement, Defendant was granted a three (3) month grace period for August, September, and October when he paid no royalties.

15. Pursuant to Section 7.1 of the Franchise Agreement, Defendant acknowledged that, "the Marks, the Services and every other component of the System are important to Franchisor and its Franchisees, and Franchisee covenants and agrees to comply with the System, in its entirety..." Section 7.1(h) had Defendant further agree not to "alter modify or otherwise change, add to or delete from any portion of the System, Marks, Copyrighted Materials or Services as licensed hereunder."

16. Pursuant to Section 9.3 of the Franchise Agreement, Defendant agreed to only advertise locally after submitting any proposed promotional material to J Dog for written approval.

17. Pursuant to Section 14.1(a) of the Franchise Agreement, Defendant agreed that "failure to pay any sum due to Franchisor, or any Affiliate or nominee of Franchisor... for a period of 30 days after written notice of such default has been delivered by Franchisor to Franchisee" is material default.

18. Pursuant to Section 14.6 of the Franchise Agreement, Defendant agreed to turn over the rights to "the telephone or facsimile number o numbers URL's or social media sites which are utilized in connection with the Franchised Business from time to time shall be held by Franchisee in trust for Franchisor and, on expiration or earlier termination of this Agreement."

19. Pursuant to Section 15.4 of the Franchise Agreement, Defendant agreed that "In the event of expiration or termination ... Franchisor shall have the option, exercisable by written notice to Franchisee to purchase from Franchisee free and clear of any lien, charge, encumbrance not previously approved franchisor, all or any portion of Franchisee's supplies or equipment of the Franchised Business."

20. Defendant also agreed to Section 18 of the Franchise Agreement, the non-compete provision. The Section 18 states:

> Except as expressly permitted by this Agreement or by any other written agreement between Franchisor and Franchisee, during the currency of this agreement and for a period of 24 months after expiration of the Term or an exercised Renewal Term or earlier termination of this Agreement, Franchisee shall not:
>
> (a) directly or indirectly,
>
> (b) in any capacity whatsoever,
>
> (c) either alone or in any relationship with any other person, firm, corporation or other business organization,
>
> (d) as an employee, consultant, principal, agent, member, partner, shareholder, investor, lender, director, officer, guarantor, indemnitor, credit holder, supplier, landlord or sub landlord,
>
> (e) within the Territory,
>
> (f) within a 15 mile radius of the territory of any Franchised Business of the System (including one owned by Franchisor or one of its Affiliates) which is in existence at the date of expiration or sooner termination of this Agreement, and
>
> (g) within the metropolitan area in which the Territory is situated, more particularly described in **Schedule A**, compete with the System (or any similar system owned by Franchisor or its Affiliates) or (i) carry on, engage or be financially concerned or interested in, or (ii) advise, supervise, manage, supply, loan money to or guarantee or indemnify the duties or obligations of any other person, firm, corporation or other entity engaged in or concerned with or interested in any business engaging in any enterprise similar in nature to the System, or offering for sale any products similar to the Services. This Article shall also continue to apply to Franchisee in the case of any assignment of this Agreement or any sale of the Franchised Business or transfer or allotment of shares of Franchisee. This Article shall survive the expiration or sooner termination of this Agreement and any assignment, transfer or sale hereunder. Franchisee acknowledges that by reason of the unique nature and considerable value of the Marks and the business reputation associated with Franchisor and the System, including methods of operating, format and related proprietary

> rights and by reason of Franchisee's knowledge of and association and experience with the System, the provisions of this Article are reasonable and commensurate for the protection of the legitimate business interests of Franchisor, its Affiliates and franchisees. Franchisor may, by written notice to Franchisee, reduce one or more of the temporal, territorial or scope of restricted activities aspects of non-competition provided in this Article.

**Defendant's History of Non-Compliance**

21. Defendant substantially and repeatedly failed to comply with, among others, the above-referenced provisions of the Franchise Agreements. Defendant repeatedly breached the Franchise Agreements by, among other things, refusing to make royalty payments to J Dog due under the Franchise Agreement and refusing to abide by the rules governing promotion and the use of the Marks.

22. Defendant refused to pay the one thousand dollars ($1000) monthly royalty payments when his monthly royalty fee increased in November of 2014. Instead Defendant continued to pay five hundred dollars ($500) a month. Defendant made a five hundred dollar ($500) payment in December.

23. When J Dog notified Defendant of his breach, Defendant ceased all payment, starting in January of 2015. Defendant made it clear verbally and in writing that he had no intention of making any further royalty payments.

24. This failure to pay royalties is a default under Section 14.1(a) of the Franchise Agreement.

25. Defendant conducted local promotion for his business without prior notification to J Dog utilizing the following URLs, www.junkremovalservicehouston.com and www.junkremoval123.com/tx/houston.php. Defendant did this without J Dog's approval (written or otherwise) prior to conducting this advertising.

26. This failure to notify and receive approval is in contravention of Section 9.3 of the Franchise Agreement a default under Section 14.1(e) of the Franchise Agreement.

27. From at least January 9, 2015 through February 8, 2015, J Dog repeatedly brought these defaults to Defendant's attention via multiple letters and emails.

28. Because of the aforementioned material faults and Defendant's refusal to cure said faults, J Dog terminated Defendant's Houston Franchise on February 8, 2015.

**Defendant's Failure to Abide by the Post-Termination Covenants of the Franchise Agreements**

29. Under Section 15 of the Franchise Agreement, Defendant agreed that upon termination, he would *inter alia*:

(a) discontinue use or display of the Marks, Operations Manuals, Copyrighted Materials and other materials provided by Franchisor such as advertising materials and training materials, trade secrets, systems, methods of operation, format and goodwill of the System.

(b) change the color scheme of the Franchised Location and Vehicle and Trailer to one that differentiates it from the color scheme of the System and shall remove all signage related to the System from the Franchised Location and Vehicles and Trailers.

(c) not operate or do business under any name or in any manner that might tend to give the general public the impression that Franchisee is directly or indirectly associated, affiliated, licensed by or related to Franchisor or the System,

(d) not, directly or indirectly, use any Mark, or any other name, logo, signage, symbol, insignia, slogan, advertising, copyright, Copyrighted Materials, confusingly similar to those used by the System. Franchisee acknowledges the proprietary rights of Franchisor as set out in this

(e) promptly remove any signage and murals from the Franchised Location and any other premises from which the Franchised Business is conducted which uses the Marks or otherwise and refers, directly or impliedly, to the System..

30. Defendant has refused to cease operating the Franchised Business and continues to hold himself out to the public as an authorized J Dog Franchisee.

31. Defendant continues, without authorization, to use the confidential methods, procedures and techniques associated with the System. Defendant also continues, without authorization to use the trademarks, service marks, tradename and other marks and distinctive forms, slogans, signs, symbols, logos and devices associated with the System, as well as advertising materials, stationery, forms and other articles which display marks associated with the System

32. Upon information and belief, Defendant refuses to tender to J Dog all of the signs, advertising materials and other items in their possession bearing the Marks.

33. Defendant has refused to cease using the telephone numbers associated with the terminated Houston Franchise location.

34. Defendant continues to hold himself out as associated with J Dog on facebook.com and other social media sites including but not limited to thumbtack.com.

35. Upon information and belief, Defendant refuses to cease servicing J Dog customers and refuses to tender to J Dog an accounting of all the supplies and equipment used in the Houston Franchise Location, so that J Dog may exercise its right to purchase said supplies under Section 15.4 of the Franchise Agreement.

**COUNT I**
(Lanham Act Violations -Trademark Infringement and Unfair Competition)

36. J Dog incorporates the allegations contained in the preceding paragraphs as fully set forth in this paragraph.

37. For the protection of both the public and J Dog, J Dog seeks to enforce the termination of the Franchise Agreement to ensure that Defendant does not continue to operate a J Dog Franchise Location for the Houston, Texas area, use the Marks or otherwise identify themselves as an authorized J Dog Franchise.

38. Defendant has knowledge of the termination of the Franchise Agreement and is intentionally trading on J Dog's marks, trade dress and business system and is deliberately misappropriating J Dog's goodwill for his own benefit. Defendant's continued identification of his business as a J Dog Franchise negatively affects J Dog's reputation and the reputations of other J Dog franchisees and the goodwill of the J Dog proprietary Marks.

39. Defendant is guilty of infringement pursuant to the Lanham Act, 15 U.S.C. §1051 et seq. Defendant's false representation of his business as being affiliated with J Dog also constitutes a false designation of the origin of Defendant's services in violation of 15 U.S.C. §1125(a); and Defendant's

conduct is a violation of the common law of unfair competition and is an unfair trade practice under the common law.

40. Defendant's continued operation as set forth above will cause J Dog irreparable injury in that J Dog cannot control the manner in which J Dog's image is being presented as J Dog rapidly expands across the country. J Dog will have difficulty refranchising Defendant's trading areas; business will be diverted from J Dog's authorized franchisees; the reputations of both J Dog and its authorized franchisees will be damaged; the goodwill related to J Dog's Marks, trade dress and business system will be diluted and taken from J Dog's control; J Dog's relationship with its authorized franchisees will be impaired; and J Dog will lose profits and revenues which, because of Defendant's conduct, cannot be readily calculated.

41. J Dog has no adequate remedy at law in that the damages as set forth above, the misappropriation and theft of its proprietary marks, business system and trade secrets and the consequent injury to consumer recognition and goodwill, and the inability to refranchise the affected trading areas, cannot be adequately compensated for in monetary damages.

42. J Dog's immediate and irreparable harm will continue unless Defendant is enjoined from committing these wrongful acts.

WHEREFORE, J Dog demands judgment in its favor against Defendant Louis Vaughn as follows:

(a) A preliminary and permanent injunction enjoining Defendant, his agents, employees and any person acting in concert with them from using the names " J DOG JUNK REMOVAL " or "J Dog" and/or any similar designation, trade name or trade dress or otherwise suggesting an affiliation with J Dog or otherwise unfairly competing with J Dog;

(b) That Defendant be required to eliminate the words " J DOG JUNK REMOVAL " or " J Dog " and any similar designation from all telephone directories, immediately cancel any telephone service to Defendant's business advertised under these or any similar names, and assign all telephone numbers utilized in Defendant's businesses to J Dog;

(c) An accounting by Defendant of the profits to which J Dog may be entitled pursuant to 15 U.S.C. §1117(a)(l);

(d) Treble damages pursuant to 15 U.S.C. §1117(b);

(e) Attorney's fees pursuant to 15 U.S.C. §1117(a);

(f) Costs of this action pursuant to 15 U.S.C. §1117(a)(3);

(g) Pre-judgment and post-judgment interest pursuant to 15 U.S.C. §1117(b);and

(h) Such further relief as this Court deems appropriate.

**COUNT II**
(Breach of Contract, Post-Termination Covenants)

43. J Dog incorporates the allegations contained in the preceding paragraphs as if fully set forth in this paragraph.

44. Defendant's continued operation as set forth above is a breach of his obligations under the Franchise Agreement to not engage in any business similar to the J Dog System within the Houston, Texas area for two (2) years.

45. Defendant's continued operation of the Houston Franchise's has caused and will continue to cause J Dog irreparable harm. Additionally, J Dog's other authorized franchisees will suffer irreparable harm as a result of Defendant's conduct.

46. J Dog has no adequate remedy at law in that the damages as set forth above, including loss of goodwill, interference with its other franchise relationships, lost profits and the inability to refranchise the Houston Franchise's market area cannot be compensated for in monetary damages.

WHEREFORE, J Dog demands judgment in its favor against Louis Vaughn, as follows:

(a) A preliminary and permanent injunction enjoining Louis Vaughn, directly or indirectly, for itself, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from owning, maintaining, engaging in, being employed by, or having any interest in any business providing Junk or Garbage, towing or hauling within the Designated Area of the of the Houston Franchise or within the Designated Area of the office location of any other business using the System for a period of two (2) years from the date of termination of the Houston Franchise Agreement or the date on which defendant complies with all of its post-termination obligations under the Franchise Agreement including, without limitation, the Franchise Agreement's post-termination covenant not to compete, whichever is later;

(b) A preliminary and permanent injunction enjoining Louis Vaughn, for the two (2) year period following the termination of the Franchise Agreement or the date which defendant ceases to operate the Franchised Business, whichever is later, from diverting or attempting to divert any business or customer of the J Dog Franchised Businesses to any competitor, by direct or indirect inducement or otherwise, or from doing or performing, either directly or indirectly, any other act injurious or prejudicial to the goodwill associated with J Dog's trademarks, trade names, service marks or the J Dog System;

(c) A preliminary and permanent injunction enjoining Louis Vaughn, for the two (2) year period following the termination of the Franchise Agreement or the date which defendant ceases to operate the Franchised Businesses, whichever is later, from employing or seeking to employ any person who is at that time employed by J Dog or by any J Dog franchisee,

**COUNT III**
(Breach of Contract-Money Damages)

47. J Dog incorporates the averments contained in preceding paragraphs as if fully set forth in this paragraph.

48. Defendant has failed to pay J Dog Fees for November 2014, December 2014, and January 2015.

49. As a result of defendant's breaches, Defendant received his first termination notice on January 7, 2015 and the Franchise Agreement was finally terminated by Notice dated February 9, 2015.

50. Under the terms of the Franchise Agreement, J Dog had anticipated receiving continued revenue from defendant's royalty payments until June 2023.

51. Defendant's breach of the Franchise Agreement has damaged J Dog in that J Dog no longer has the potential to receive future royalties and payments for the remaining unfulfilled term of the Franchise Agreement.

52. Under Section 14.5 of the Franchise Agreement J Dog is entitled to receive future royalties in the event of termination.

WHEREFORE, J Dog demands judgment in its favor against defendant Louis Vaughn in a sum to be determined at the time of trial (reduced to its present value), which amount exceeds $155,000,

representing the value of royalty payments anticipated by J Dog under the Franchise Agreement for the remaining term of the Franchise Agreement in addition to the J Dog royalty fees due for November 2014, December 2014, and January 2015 together with costs, attorneys' fees, pre-judgment and post-judgment interest and such other relief as the Court deems appropriate.

**COUNT VI**
(For an Accounting)

53. J Dog incorporates the averments contained in preceding paragraphs as if fully set forth in this paragraph.

54. Under the terms of the Franchise Agreements, Defendant agreed to account to J Dog for the accounting of all the supplies and equipment used in the Houston Franchise Location, so that J Dog may exercise its right to purchase said supplies under Section 15.4 of the Franchise Agreement.

55. Defendant has failed to account, or to accurately account, to J dog under Section 15.4 of the Franchise Agreement.

56. This failure to account has made it impossible for J Dog to exercise its rights under Section 15.4 of the Franchise Agreement to buy supplies and equipment.

WHEREFORE, Plaintiff J Dog demands judgment in its favor and against Defendant Louis Vaughn, for an accounting of the all supplies and equipment of the Houston Franchise, and as a result of such accounting, for J Dog to have the right to purchase such supplies and equipment pursuant to Section 15.4 of the Franchise Agreement and an other relief as this Court deems appropriate.

## COUNT VII
(Declaratory Judgment)

57. J Dog incorporates the averments in preceding paragraphs as if fully set forth in this paragraph.

58. Defendant's continued operation of the Houston, Texas area locations as "J Dog 2 " creates an actual controversy between J Dog and Defendant concerning the rights and obligations contained in the Franchise Agreements. J Dog, therefore, requests that the Court declare Defendant to be in violation of the Franchise Agreements.

59. Pursuant to this declaration, J Dog first requests that the Court declare that the Franchise Agreements have been properly terminated and further declare that Defendant has no further rights with respect to the Franchise Agreement.

WHEREFORE, J Dog demands that this Court enter a Declaratory Judgment declaring Defendant Louis Vaughn to be in default of the Franchise Agreement; declaring that the Franchise Agreement has been properly terminated by J Dog and that Defendant has no further rights with respect to the Franchise Agreement or the National; declaring that J Dog may remove Defendant as a J Dog Franchisee; declaring that all sums due under the Franchise Agreement be immediately paid; and such other relief as this Court deems just and appropriate.

SPADEA, LANARD & LIGNANA LLC

Respectfully Submitted,

Samuel Halterman, Esq.
SPADEA, LANARD & LIGNANA LLC
1315 Walnut Street, Suite 1532
Philadelphia, Pa 19107
T: (215) 525-1165
F: (800) 797-0422
Atty. Id. 317149